## 0024

Ex parte Robert W. DIBBLE, Jr., and George L. Dial, Jr., Appellants. In re Earl T. HAMAAS, Applicant, v. STATE of South Carolina, Respondent, of whom Earl T. Hamaas, and State of South Carolina are Respondents.

(310 S. E. (2d) 440)

Court of Appeals

R. W. Dibble, Jr., and *George L. Dial, Jr., pro se.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Asst. Attys. Gen. William K. Moore* and *Larry C. Batson,* Columbia, *for respondents.*

*Michael H. Quinn, Joseph M. Arndt* and *Claire T. Manning,* of *Quinn & Smith,* Columbia, *for Richland County Bar Association, amicus curiae.*

Dec. 19, 1983.

SANDERS, Chief Judge:

Appellants Dibble and Dial are lawyers appointed by the circuit court to represent Earl T. Hamaas in several civil actions which he brought against the State, complaining of circumstances attendant to his incarceration in the state penitentiary. The lawyers sought to be relieved of the appointment, contending that in requiring them to represent Hamaas without compensation, the court deprives them of constitutional rights pursuant to the 14th and 5th Amendments of the United States Constitution. The judge below agreed Hamaas was not entitled to appointed counsel, but refused to vacate the order appointing Dibble and Dial. We remand.

It has been traditionally held that a lawyer, by accepting a license to practice law, becomes an officer of the court and assumes the obligation of representing, without pay, indigent defendants in criminal cases. *Powell v. State of Alabama*, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *United States v. Dillon*, 346 F. (2d) 633 (9th Cir. 1965). For many years courts have viewed uncompensated service as a duty attendant to the public office which the lawyer voluntarily seeks. For this reason, the lawyer is not a private citizen being deprived of property without just compensation or due process. *See, e.g., Dillon; cf. Hurtado v. United States*, 410 U. S. 578, 93 S. Ct. 1157, 35 L. Ed. (2d) 508 (1973).

Dibble and Dial, however, correctly point out that the instant case differs from a criminal case where the person for whom counsel is appointed has a 6th Amendment right to representation which takes precedence over any 14th and 5th Amendment rights of appointed lawyers. They cite cases in other states which have held statutes requiring lawyers to serve as uncompensated counsel in civil cases to be unconstitutional. *E.g., Bedford v. Salt Lake County*, 22 Utah (2d) 12, 447 P. (2d) 193 (1968). *See also, Honore v. Washington State Board of Prison Terms and Paroles*, 77 Wash. (2d) 660, 466 P. (2d) 485 (1970) (counsel is entitled to compensation). In addition, they cite decisions from other jurisdictions which tend to erode the traditional view that lawyers must serve without compensation even in criminal cases. *State v. Green*, 470 S. W. (2d) 571 (Mo. 1971); *Bradshaw v. Ball*, 487 S. W. (2d) 294 (Ky. 1972).

Dibble and Dial therefore argue forcefully that the court below abused its discretion by appointing them, without compensation, to represent a person who has no right to appointed counsel. The Richland County Bar appears Amicus Curiae and joins generally in their argument. The Bar cites, among other cases, *Knox County Council v. State*, 217 Ind. 493, 29 N. E. (2d) 405 (1940) in which the Indiana Supreme Court observes:

If a law should be enacted requiring every person licensed by the State to render services, or furnish the materials of their business, to paupers gratuitously, much difficulty would be found in justifying a decision holding the law unconstitutional as depriving the green grocer or the restaurant operator of his goods, or as

depriving the physician, or the barber, or the plumber, or the electrician, or the mechanical engineer of his services, without compensation, while adhering to a rule that licensed attorneys' services may be taken without compensation. *Id.* at 29 N. E. (2d) 412.

We view this argument as what the French call a *fausse idée claire* — that is to say, an idea brilliantly illuminating, except that it is wrong.[1]

The issue here is obviously not one of whether the prisoner Hamaas has a statutory or constitutional right to a free lawyer. Indeed, it appears without question that he has none.[2] Rather, the question before us is whether the court may appoint a lawyer for a litigant who has no legal right to counsel.

The function of lawyers in the administration of justice is manifestly more than merely to act as advocates for parties to disputes. Moreover, the advocacy system itself sometimes cannot operate to produce just results unless all sides of a dispute are competently represented. The various people who make up courts: bailiffs, clerks, court reporters, jurors and even judges, often play roles only secondary in importance to lawyers in causing justice to be done.

Courts have the inherent power to do all things reasonably necessary to insure that just results are reached to the fullest extent possible. *State ex rel. Gentry v. Becker*, 351 Mo. 769, 174 S. W. (2d) 181 (1943); see cases collected at West's General Digests, *Courts*, Key No. 27. Accordingly, we hold that this inherent power must necessarily include the power to appoint lawyers to serve without compensation where it appears reasonably necessary for the court to do justice.[3] Under such circumstances, lawyers benefit not only the litigants whom they represent, but all of society as well. The Indiana Supreme Court may see no difference be-

---

[1] William F. Buckley, Jr., "Firing Line" (October 1983).

[2] The United States Supreme Court has never held that an indigent party has a constitutional right to counsel in any civil case. *Baxter v. Palmigiano*, 425 U. S. 308, 96 S. Ct. 1551, 47 L. Ed. (2d) 810 (1976); *Wolff v. McDonnell*, 418 U. S. 539, 94 S. Ct. 2963, 41 L. Ed. (2d) 935 (1974); *United States v. Kras*, 409 U. S. 434, 93 S. Ct. 631, 34 L. Ed. (2d) 626 (1973).

[3] *Cf. Application of Romano*, 109 Misc. (2d) 99, 438 N.Y.S. (2d) 967 (1981); *Dade County v. McCrary*, 260 So. (2d) 543 (Fla. Dist. Ct. App. 1972).

tween the services to society of green grocers, barbers, plumbers, etc., and the services of lawyers, but we do. It is possible, albeit inconvenient, for a civilization to exist without the services of these occupations, but a civilization is not possible without a competent system to administer justice. Lawyers are an integral and necessary part of such a system, at least as we know it in this country.

We are also not willing to abandon the historic distinction between occupations and professions, despite recent infusions of commercialism into the latter. As our Supreme Court held in *In re Jacobson*, 240 S. C. 436, 448, 126 S. E. (2d) 346, 353 (1962),

> ... the practice of law is a profession — not a business or skilled trade. While the elements of gain and service are present in both, the difference between a business and a profession is essentially that while the chief end of a trade or business is personal gain, the chief end of a profession is public service.

We further note Ethical Considerations 2-25 and 2-29 of Supreme Court Rule 32 which provide that it is the obligation of lawyers to render free legal services to those unable to pay. We know of no such legally enforceable rule applicable as a condition of licensure to green grocers, barbers and plumbers.

We are, at the same time, not unmindful of the position occupied by lawyers personally and as private citizens. We agree that it is unfair to cast on them, alone, the burden of serving the needs of the whole of society without compensation. *Kovarik v. County of Banner*, 192 Neb. 816, 224 N. W. (2d) 761 (1975). Courts may have the inherent power to order that appointed lawyers be compensated from public funds, thus transferring this burden to the state where it properly belongs. We do not reach the matter of ordering compensation here because this question was not raised below. *Murphy v. Hagan*, 275 S. C. 334, 271 S. E. (2d) 311 (1980). However, we decline to join other courts which have refused to appoint lawyers until such time as compensation is made available from the states by their legislatures.

We are also aware that in ordinary civil cases the participation of lawyers is not always necessary for a court to render justice. For this reason, we would not require that lawyers be

appointed to serve in every case. Instead, in an effort to balance all equities, the following procedure should be followed by the circuit courts of this State in deciding whether to appoint lawyers in civil cases.[4]

Before a lawyer is appointed to serve against his will and without compensation, the court should first review the issues presented by the case and make a finding that the case is extraordinary because it appears appointment of counsel is necessary to render justice. The court should then determine whether the litigant is able to secure a lawyer on his own. A lawyer should be appointed only if the court finds that the litigant is not reasonably able to do so. These two findings, together with their legal and factual bases, should be set forth explicitly by the court in its order of appointment.

In connection with appointments of lawyers, several additional considerations should be taken into account.

The court should inquire as to whether there is any public agency charged with the responsibility of representing indigents which is in a position to provide the representation (e.g., a legal aid or public defender's office). The court should further inquire as to whether there are any private lawyers or organizations willing to supply counsel as a pro bono service to the litigant and the court. Consideration should also be given to appointing lawyers, where reasonably available, who are already on the public payroll (e.g., lawyer employees of the various departments and agencies of state government). After all, these lawyers are already being compensated by society.[5]

Finally, the Court should take care to insure that appointments are fairly distributed among all members of the State

---

[4] This procedure is required only in civil cases where there is no constitutional or statutory right to counsel. For example, it is not applicable to criminal cases where appointed counsel is required pursuant to *Gideon v. Wainwright*, 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed. (2d) 799 (1963). It is also inapplicable to family court cases where counsel is required pursuant to Family Court Rule 4.

[5] We do not imply that only lawyers employed by the State may be appointed, but rather that the court should consider appointing these lawyers where feasible. *Cf. Menin v. Menin*, 79 Misc. (2d) 285, 359 N.Y.S. (2d) 721 (1974).

The Supreme Court of Missouri has recognized such a procedure in criminal cases. *State ex rel. Wolff v. Ruddy*, 617 S. W. (2d) 64 (Mo. en banc 1981), *cert.*

Bar so as not to unduly burden the Bar of any county, or any lawyer or group of lawyers, to the exclusion of others.

Accordingly, this case is remanded to the circuit court so that it may review its order of appointment as here provided.

Remanded.

GARDNER and CURETON, JJ., concur.

*denied* 454 U. S. 1142, 102 S. Ct. 1000, 71 L. Ed. (2d) 293 (1981). For a discussion of one system of appointment of government lawyers in that state, see Order of Circuit Judge Byron L. Kinder, 19th Judicial Circuit, Cole County, Missouri (May 6, 1981), and "Lawyer Roundup in Jeff City," *Time* (May 4, 1981).